

2005 Decisions

**Opinions of the United
States Court of Appeals
for the Third Circuit**

1-31-2005

# Khudyakov v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Khudyakov v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1545.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1545

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  04-1447

VOLODIMIR KHUDYAKOV,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY
GENERAL OF THE UNITED STATES,

Respondent

_____

On petition for review of a final order
of the Board of Immigration Appeals
File No. A79-392-411

_____

Submitted pursuant to LAR 34.1(a)
January 20, 2005

Before: ALITO, McKEE and SMITH, *Circuit Judges*

(Filed: January 31, 2005)

_____

OPINION OF THE COURT

_____

SMITH*, Circuit Judge.*

Volodomir Khudyakov, a Ukrainian citizen, fled to this country in April 2001.  He

filed a timely application seeking political asylum, withholding of removal and relief

under the Convention Against Torture ("CAT").  After the Board of Immigration Appeals

("BIA") affirmed the denial by the Immigration Judge ("IJ") of Khudyakov's asylum application, Khudyakov filed a timely petition for review.[1]  For the reasons set forth below, we will deny the petition for review.

We review the BIA's decision under the deferential substantial evidence standard. *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2001) (en banc); *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (declaring that the final order we review is that of the BIA). This requires that we determine whether a reasonable fact finder could make the same determination as the agency based on the administrative record.  If so, there is substantial evidence to support the finding.  *Dia*, 353 F.3d at 249.

Khudyakov claims that he was persecuted in his native Ukraine because he was a Jewish sympathizer.  In support of his claim of persecution, Khudyakov testified that in 1983 his family sheltered Gennadiy Linetskiy from the KGB.  Linetskiy was an outspoken critic of the government's persecution of Jews. After the fall of the Soviet Union in 1991, Khudyakov's mother disclosed that her family hid Lenitskiy.  Khudyakov claimed that his request for a passport at age 16, in 1993, was denied because of his family's assistance to Ukranian Jews.  Although a passport was eventually granted in 1995, the initial denial delayed Khudyakov's entry into college.

---

[1]The IJ had jurisdiction pursuant to 8 C.F.R. § 1208.2(b).  The BIA had appellate jurisdiction pursuant to 8 C.F.R. § 1003.1(b).  This Court has jurisdiction to review the BIA's order pursuant to § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252.

2

As further evidence of his claim of persecution, Khudyakov cited an incident that occurred in January 1999 when Khudyakov attended a Brit Milah celebration given by his Jewish friend, Boris Feldman, in honor of Feldman's son. The party was interrupted by three young men, who complained about the "damn Jewish music." When Khudyakov asked them to leave, he was punched and lost consciousness.

As additional support for his asylum claim, Khudyakov testified that in May 1999, while Khudyakov was walking home at night from a social gathering, he was beaten by two police officers in civilian clothing, transported to a police station, and forced to write a confession to certain theft crimes. Thereafter, Khudyakov filed a complaint with the authorities regarding his treatment by the police. Threats followed and Khudyakov moved to Kiev. According to Khudyakov, he also received threats in Kiev. Although Khudyakov contends that these threats prompted his flight to the United States, he did not actually leave Kiev until two years later.

During the initial hearing, the IJ denied petitioner's motion for a continuance, sought for medical reasons, because Khudyakov was present at the hearing and the medical documentation suggested problems that were of a chronic nature. The IJ accommodated Khudyakov's need on several occasions to use the restroom and to take a break. He continued the hearing after Khudyakov stated that he felt "very bad."

When the hearing resumed six months later, Khudyakov's counsel requested another continuance and advised the court that if the motion was denied her client would

refuse to testify because it was "too traumatic for him to continue with his testimony." The IJ found Khudyakov's position intolerable and advised Khudyakov of the BIA's decision in *Matter of Fe-Fe*, 20 I & N Dec. 116 (BIA 1989), which requires that an alien testify in support of an application for asylum. There, the BIA observed that in

> the ordinary course . . . we consider the full examination of an applicant to be an essential aspect of the asylum adjudication process for reasons related to fairness to the parties and to the integrity of the asylum process itself. . . . Moreover, if an applicant is not fully examined under oath there would seldom be a means of detecting those unfortunate instances in which an asylum claim is fabricated.

*Id.* at 118. Despite notice of this Board decision and Khudyakov's acknowledgment that he understood the requirement to testify, Khudyakov declined to testify further.

At the conclusion of the hearing, the IJ issued an oral decision denying the request for asylum, withholding of removal and relief under the CAT. The BIA affirmed. It noted that Khudyakov had refused to complete his testimony, thereby failing to sustain his burden of proof with regard to a part of his claim. The remainder of his claim, the BIA concluded, was without merit. It explained that the harm Khudyakov suffered in the 1980's, in 1993 when he applied for a passport, and in January 1999 when he was punched at the Brit Milah ceremony, did not constitute persecution. The BIA further determined that the May 1999 assault by the police was insufficient to afford Khudyakov refugee status because he failed to prove that the incident occurred on account of a protected ground.

On appeal, Khudyakov argues that the BIA erred because his testimony

4

established past persecution based on his sympathy for the plight of Ukranian Jews. In addition, Khudyakov asserts that there was a due process violation because the manner in which the IJ conducted the hearing was "offensive and severely restricted his right to a full and fair hearing on the merits of his claim for relief."

We conclude that there is substantial evidence to support the BIA's determination that Khudyakov's treatment in the 1980s, the early 1990s, and at the Brit Milah did not constitute persecution. *See Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993) (acknowledging that the BIA had interpreted the term "persecution" "to include threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). With respect to the beating Khudyakov sustained in May 1999, we find nothing in the record to compel the conclusion that Khudyakov was persecuted on account of any assistance he or his family may have offered Ukranian Jews. Indeed, we are unable to find anything in either Khudyakov's testimony or the statement attached to his asylum application that tied his beating to any such assistance or sympathies.

Khudyakov's claim that his due process rights were violated during the IJ hearing is also meritless. Khudyakov was afforded the right to testify and was notified of the consequences of refusing to testify. He freely chose not to do so. Because Khudyakov was given an opportunity to be heard at a meaningful time and in a meaningful manner, *see Abdulai*, 239 F.3d at 549 (observing that aliens facing removal are entitled to due process which requires an opportunity to be heard in a meaningful time and manner), the

5

fundamental requirements of due process were met.

For the above stated reasons, we will deny the petition for review.